FILED

MAR 1 8 2024

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

IN THE MATTER OF THE SEARCH OF    )    Case No. 4:24-sw-___40___
CARL HENRY COLEMAN III.            )
                                   )

**AFFIDAVIT IN SUPPORT OF**
**APPLICATION FOR A SEARCH WARRANT**

I, David Mitchell, a Special Agent with the Federal Bureau of Investigation ("FBI") being

first duly sworn, hereby depose and state as follows:

**INTRODUCTION**

1.    Pursuant to Federal Rule of Criminal Procedure 41, I make this affidavit in support

of an application for a search of the person of CARL HENRY COLEMAN III with a date of birth

(DOB) of June **, 1991, and social security number of ***-**-2410, further described in

Attachment A, for a sample of DNA, further described in Attachment B.  COLEMAN III is

believed to be living at 7** 27th Street, Newport News Virginia.  Newport News, Virginia is within

the Eastern District of Virginia.  This Court has jurisdiction to issue the requested warrant because

the material to be seized is presently located within the Eastern District of Virginia.

**AFFIANT EXPERTISE**

2.    I am a Special Agent with the Federal Bureau of Investigation, and have been since

2017.  That is, I am an officer of the United States, who is empowered by law to conduct

investigations regarding violations of United States law, to execute warrants issued under the

authority of the United States, and to make arrests of those offenses, as enumerated in Title 18,

United States Code, § 3052.  Prior to my employment with the FBI, I served as an officer in the

United States Marine Corps for approximately six years.  I am currently a member of the FBI Safe

Streets Peninsula Task Force (SSPTF).  In the course of my duties, I am responsible for

investigating crimes which include, but are not limited to, white collar crime, violent crime, criminal organizations, crimes against children, and robberies. Since joining the FBI, your affiant has received specialized training in criminal investigations, including those involving DNA.

3.      Based on my training and experience, I know that DNA is commonly located and recovered from evidence collected at crime scenes. I also know that DNA evidence can potentially identify perpetrators involved in criminal activity as well as exclude uninvolved persons.

4.      Because this affidavit is being submitted for the limited purpose of establishing probable cause for the requested warrant, I have not included every detail or every aspect of the investigation. Rather, I have set forth only those facts that I believe are necessary to establish probable cause. I have not, however, excluded any information known to me that would defeat a determination of probable cause. The information contained in this affidavit is based on my personal knowledge, my review of documents and other evidence, and my conversations with other law enforcement officers and other people. All conversations and statements described in this affidavit are related in substance and in part unless otherwise indicated. Summaries and descriptions, including quotations of recorded conversations (if any) are based on a review of audio recordings and draft transcripts.

5.      Wherever in this affidavit I discuss information resulting from physical surveillance, that information (except where otherwise indicated) does not set forth my own personal observations, but rather has been provided directly or indirectly through other law enforcement officers or electronic devices that conducted such surveillance.

6.      The United States is investigating COLEMAN III for violations of 18 U.S.C. § 922(g) (possession of firearm by a prohibited person). Since this affidavit is being submitted for the limited purpose of securing a warrant to obtain a sample of the DNA of COLEMAN III, I have

2

not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence (described in attachment B) of violations of the aforementioned sections of Title 18 are present in or on CARL COLEMAN III.

7. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

8. On February 8, 2023 at approximately 4:38 PM, members of the Newport News Police Department (NNPD) initiated a traffic stop on a Red GMC Terrain, bearing Virginia license plate DA21-829. The results of the traffic stop were documented in NNPD Report 202301350. Additionally, multiple officers associated with the traffic stop had their department issued body cameras turned on and recording. Your affiant reviewed both the contents of the report, and the relevant body camera footage of the interaction.

9. NNPD Detectives Thompson and Paulino observed a Red GMC Terrain bearing Virginia license plate DA21-829 driving Northbound on Jefferson Avenue in Newport News at a high rate of speed, visually estimated to be in excess of 70 mph in a posted 45 mph zone. The Detectives observed the vehicle weaving in and out of traffic at a speed well in excess of the flow of traffic, presenting a danger to the other citizens on the roadway. The Detectives activated their emergency equipment to initiate a traffic stop.

10. The Red GMC Terrain stopped in the vicinity of York Circle and Peninsula Drive in Newport News, Virginia. Newport News is within the Eastern District of Virginia.

3

11. NNPD Detectives Thompson and Paulino made contact with the occupants, which consisted of the driver, CARL HENRY COLEMAN III, and a front seat passenger, DARREL HENRY. COLEMAN III did not have his license available to provide to the Detectives; instead, he provided his Social Security Number. COLEMAN III did not consent to a search of his vehicle. The Detectives determined neither COLEMAN III nor HENRY were properly licensed drivers in the state of Virginia. Citing NNPD policy on towing, Detective Thompson informed COLEMAN III the vehicle would be towed, as it was parked in a position in the roadway affecting traffic. HENRY was allowed to remove his personal backpack from the front passenger area of the vehicle, and HENRY departed the scene.

12. At approximately 4:47 PM, NNPD began the tow process. COLEMAN III advised Detectives that his father would come tow the vehicle. Detective Thompson explained that if COLEMAN III's father arrived, NNPD would discontinue the tow procedure, but, per policy, the tow process would be followed until then.

13. Per NNPD policy, prior to taking custody of the vehicle to be towed, an inventory search of the Red GMC Terrain was initiated by NNPD personnel.

14. At approximately 4:54 PM, during the inventory search, Detective Thompson found a handgun, a Sig Sauer P320 pistol, serial number M17A017272, containing a magazine filled with 21 9mm cartridges, concealed in a black and white backpack stored in the rear floorboard behind the driver's seat of the vehicle, the seat occupied by COLEMAN III. Detective Thompson detained COLEMAN III and provided COLEMAN III his rights under Miranda. COLEMAN acknowledged understanding those rights and then subsequently answered the officers' questions. COLEMAN III stated he was a felon, but he believed his rights had been restored. COLEMAN III denied possessing a firearm. Later, COLEMAN III explained he took

4

the bag from his father's shop, but said he did not know there was a firearm inside it when he took the bag.

15.    At approximately 4:56 PM, COLEMAN III's father arrived on scene.

16.    Upon the discovery of the handgun in the Red GMC Terrain, NNPD officers were dispatched to locate HENRY, who had earlier departed the scene while he was free to leave. Officers located HENRY and escorted him back to the location of the traffic stop. Detective Thompson provided HENRY his rights under Miranda. HENRY acknowledged understanding those rights and then subsequently answered the officers' questions.. HENRY denied any knowledge of the handgun, and said he only worked with COLEMAN III. COLEMAN III was providing HENRY a ride home from work. HENRY consented to a search of his backpack by NNPD officers, who found no relevant items of evidence in the backpack.

17.    NNPD conducted a review of COLEMAN III's criminal history. Ultimately NNPD could not confirm whether COLEMAN III's Federal criminal conviction was a felony. Per NNPD policy, NNPD seized the firearm and the magazine contained within. COLEMAN was released. NNPD later completed an initial forensic examination of the firearm, including swabbing the pistol for DNA, and processing the firearm for latent prints. No prints of value were obtained from the firearm.

18.    Your affiant reviewed COLEMAN III's criminal history to confirm he is a convicted felon. COLEMAN III was convicted of False Statements on September 9, 2013. COLEMAN III was sentenced to 33 months of incarceration, followed by three years of supervised release. Your affiant confirmed that COLEMAN III has not had his rights restored.

19.    Your affiant has reviewed information associated with Sig Sauer, the manufacturer of the Sig Sauer P320 pistol with serial number M17A017272. Sig Sauer is a firearms

5

manufacturer with United States headquarters in Newington, New Hampshire and is part of a worldwide firearms manufacturing company that includes J.P. Sauer & Sohn and Blaser, Gmbh. in Germany. New Hampshire is outside of the state of Virginia. Based on this information, your affiant believes the manufacture, transport, and sale of the Sig Sauer P320 pistol with serial number M17A017272, has been both shipped and transported in interstate and foreign commerce.

## SEARCH PROCEDURE

20.     Swabbing the inside of a subject's mouth or cheek with a sterile cotton swab and preserving the saliva and cells obtained as a result is a reliable method for collecting a DNA sample. This process is called taking a "buccal swab" or "buccal smear." Your affiant has received training in how to collect a DNA sample and prevent contamination of the resulting evidence. Your Affiant has sterile swabbing kits for use in collection and preservation.

## CONCLUSION

21.     Based on the facts set forth above, your affiant believes probable cause exists to believe that obtaining a DNA sample from CARL HENRY COLEMAN III, via buccal swab may lead to relevant additional evidence connecting COLEMAN III to violations of Title 18 U.S.C. § 922(g) (possession of firearm by a prohibited person). The bag containing the firearm was located immediately behind COLEMAN III driver's seat, and there were no rear passengers in the vehicle at the time of the stop. Additionally, COLEMAN III's passenger carried a separate backpack which he had taken with him after the initial stop by NNPD. Finally, when interviewed, COLEMAN III admitted to taking the bag from his father's shop. Accordingly, I request that a warrant be issued authorizing FBI agents, with assistance from other law enforcement personnel to search COLEMAN III, further described in Attachment A, and obtain buccal swab samples suitable for laboratory comparison, further described in Attachment B.

6

Respectfully submitted,

David Mitchell
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me this _18th_ day of March 2024 at Norfolk, Virginia.

THE HONORABLE
UNITED STATES MAGISTRATE JUDGE

SEEN AND APPROVED:

Therese N. O'Brien
Assistant United States Attorney

7

## ATTACHMENT A
### Location to be Searched

The person, specifically, the inside cheek and mouth, of CARL HENRY COLEMAN III, date of birth (DOB) June **, 1991, social security number ***-**-2410.  COLEMAN III is presently believed to reside at 742 27th Street, Newport News, Virginia 23607, in the Eastern District of Virginia.



## ATTACHMENT B
### Particular Things to be Seized

The following is a list of items to be seized from the inside the mouth and cheek of CARL

HENRY COLEMAN III:

A sample of COLEMAN III's DNA-rich saliva, collected via two sterile buccal swabs

contained in a DNA collection kit.

The officer executing this warrant shall preserve said DNA sample and submit it for subsequent

analysis and testing.